The document below is hereby signed.

Signed: July 2, 2014



*S. Martin Teel, Jr.*
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                              )
                                   )
PIERRE PHILIPPE BARKATS,           )   Case No. 14-00053
                                   )   (Chapter 7)
            Debtor.                )   **Not for Publication in**
                                   )   **West's Bankruptcy Reporter**

MEMORANDUM DECISION AND ORDER TENTATIVELY
VACATING ORDER FOR RELIEF, STRIKING AFFIDAVIT,
AND ADDRESSING APPROPRIATE SERVICE ADDRESS FOR DEBTOR

This case was commenced by the filing of an involuntary petition on January 30, 2014, and when the putative debtor failed timely to respond, the court entered the order for relief. The debtor has now filed a motion, through counsel, to vacate the order for relief on the grounds that he was not properly served with the involuntary petition and summons. In support of his motion, the debtor has filed an affidavit, which the petitioning creditors have moved to strike. As explained in more detail below, the court will strike the debtor's affidavit with leave to file an amended affidavit or unsworn declaration, and will tentatively vacate the order for relief due to a lack of proper service.

I

On February 4, 2014, the petitioning creditors served the summons and involuntary petition on the debtor by "delivery through owner and co-resident Sandy Jensen at 6702 Offutt Lane, Chevy Chase, MD 20815."  The petitioning creditors chose to serve the debtor at this address after seeing that the debtor's attorney in the Superior Court, Jeffrey Hannon, listed this as the debtor's address on a notice of appeal he filed in the Superior Court for the District of Columbia.  According to Hannon, the address belongs to a friend of the debtor, and Hannon listed it on the notice of appeal solely as a local address to receive mail for the debtor if sent by the D.C. Court of Appeals.  Regardless of Hannon's intent when completing the form, the form, itself, instructs the filer to "[p]rovide the names, addresses, and telephone numbers of all parties to be served," and is silent on the question of whether the address provided serves as the individual's residence.

According to his affidavit, which was notarized in France and signed under "penalty of perjury," Mr. Barkats has resided in France since 2011, he does not reside at the service address used by the petitioning creditors, and he has never resided at or visited the service address used by the petitioning creditors.  The petitioning creditors contend that the affidavit fails to

comply with the Hague Convention and should be stricken accordingly.

In their affidavits, the petitioning creditors contend that they did not know that Barkats does not live at the service address, that they relied, in good faith, upon the address provided by the debtor's attorney, Hannon, on the notice of appeal, and given prior misrepresentations allegedly made by Barkats about his whereabouts, the petitioning creditors cannot at this juncture say definitively whether Barkats does or does not reside at the service address.  The petitioning creditors' affidavits contend that Barkats frequently travels, misrepresents his whereabouts, provides false addresses, and through this shell game is able to avoid service of process.

On February 10, 2014, the petitioning creditors contend that Barkats placed telephone calls to creditors Kalellis and Shekoyan.  When those creditors returned his call, Barkats asked them to "take back" the petition, and indicated that his attorney could help them accomplish that.  As such, the petitioning creditors take the position that the debtor had actual notice of the involuntary petition, and under the circumstances, and given that the petitioning creditors proceeded in good faith, that should suffice.

Aside from the fact that the service address was listed on the debtor's notice of appeal in the Superior Court, the

3

petitioning creditors have not offered evidence to support the contention that Mr. Barkats resides at or ever has resided at the service address.  Instead, they take the position that they were entitled to rely upon the address because it was provided by Barkats's attorney as Barkats's address on a notice of appeal filed in the Superior Court.

                              II

The petitioning creditors have moved to strike the debtor's affidavit on the grounds that it fails to comply with the Hague Convention because it does not bear the requisite apostille.[1] Their argument has merit.  The United States is a party to the Hague Convention Abolishing the Requirement of Legalisation for Foreign Documents, Oct. 5, 1961, 1981 WL 375769 (U.S. Treaty). As between member countries, the treaty simplifies the procedures that must be followed to certify the authenticity of public documents executed in a foreign country, and among the documents considered public documents under the treaty are "notorial acts [and] official certificates which are placed on documents signed by persons in their private capacity, such as official certificates recording the registration of a document or the fact

---

[1] The petitioning creditors contend that the debtor should have obtained the apostille from the American Embassy.  It is this court's understanding that an apostille intended to authenticate a French document for use in a court in the United States would not be obtained from the U.S. Embassy, but rather, from an office operated by French authorities.

4

that it was in existence on a certain date and official and notarial authentications of signatures." As such, the provisions of the Hague Convention apply to an affidavit filed with this court that was executed and notarized in France. Articles 3 through 5 of the convention describe the content and procedure for obtaining and attaching an apostille, which is essentially an additional layer of notarization the debtor was required to obtain from French authorities if he wanted his notarized affidavit to be deemed authentic in a United States court.

While the court is required, in accordance with the Hague Convention, to accept such an apostille as proof of authenticity, a document that fails to bear such an apostille is not per se inadmissible. The apostille, however, renders an affidavit self-authenticating under Fed. R. Evid. 902, and dispenses with the legalisation procedures that might otherwise apply. The debtor has not sought to authenticate the affidavit under the Hague Convention or the more onerous legalisation procedures such as those described in Fed. R. Evid. 902(3). Likewise, although 28 U.S.C. § 1746(1) permits litigants to file unsworn declarations under penalty of perjury in lieu of affidavits, when executed outside of the United States, such a declaration must specify that the declaration is made "under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." The debtor's affidavit was made simply "under

5

penalty of perjury," without reference to the laws of the United States of America, and as such, does not satisfy the requirements of § 1746(1).  The court finds that the affidavit is inadmissible as evidence in this proceeding and will strike it accordingly.[2]

The question of authenticity and admissibility is largely academic, however.  Even when excluding the debtor's affidavit, the court concludes, as explained in further detail below, that the petitioning creditors have failed to satisfy their burden to show that service at the disputed service address was effective, and as such, the court will, tentatively, vacate the order for relief.

### III

The petitioning creditors contend that service made at the Offut Lane address should be treated as valid because it resulted in actual notice to the debtor of the involuntary petition filed against him.  Even if the court finds that the debtor received prompt actual notice of the filing of the petition, "[a]ctual notice of [a proceeding] does not satisfy the requirement of proper service of a summons under Rule 4 . . . ." *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902 (5th Cir. 1995).  The

---

[2] Given that the petitioning creditors have challenged the veracity of the debtor's affidavit, and much of the current dispute comes down to the debtor's credibility, it is appropriate to require the debtor to satisfy the formal requirements applicable to affidavits and unsworn declarations executed in a foreign country.

petitioning creditors cite to *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963), for the proposition that service that "successfully apprised the defendant of the action" is sufficient.  That case is easily distinguishable on its facts.  In that case, the defendant owned a house in Maryland and resided at that house with his family.  After residing at that home with his family for some unspecified period of time, the defendant decided to take up permanent residence in Phoenix, Arizona.  The defendant relocated to Phoenix ahead of his wife, who continued to reside at the Maryland house in order to wrap up loose ends and to be present for the closing on the sale of the house.  After the defendant had already left for Phoenix, but before the sale of the house and while the wife was still residing at the house, the plaintiff attempted to serve the defendant by leaving a copy of the complaint at the Maryland home with the defendant's wife.  The question before the court was whether the house, property still owned by the defendant and in which he had admittedly resided up until a short time before service was made and where his wife was present to receive the summons, qualified as the defendant's "dwelling house or usual place of abode" within the meaning of Rule 4.  Reversing the District Court, the Fourth Circuit Court of Appeals found service sufficient, emphasizing that the question of whether a particular location is a party's "dwelling house or usual place of abode" is a fact-

sensitive issue that must be reviewed on a case-by-case basis. The court found it significant that the house had clearly been the defendant's residence up until some time before service was made and the wife who received the summons was not an estranged spouse but, instead, someone who in fact informed the defendant of the summons.  This combination of factors led the court to conclude that justice would be served by treating the service as valid, and it denied the defendant's motion to quash service of the summons and complaint accordingly.

The *Rabinowitz* case does not stand for the broad proposition that service that results in actual notice to a would-be defendant obviates the need to satisfy the requirement of Rule 4(e)(2)(B) that a copy of the summons and complaint be left at the defendant's "dwelling or usual place of abode. . . ." Instead, it stands for the more limited proposition that courts must be flexible in how they interpret the phrase "dwelling or usual place of abode," and when reviewed on a case-by-case basis it may, in some cases, be relevant that service at a particular location led to actual notice.

Here, there is no evidence that the debtor ever owned the property in question, the party who received the summons and petition is not related to the debtor, and the only evidence that the debtor ever resided at the service address - temporarily or otherwise - is that the address was listed as a mailing address

on a paper filed by the debtor's attorney in the D.C. Superior Court.  On the current record, and even when taking a flexible view of how one defines a party's "dwelling or usual place of abode," there is not enough evidence to support a finding that the service address was the debtor's "dwelling or usual place of abode," and the need to satisfy that requirement of Rule 4(e)(2)(B) is not excused merely because the debtor received actual notice of the summons and petition.[3]  The petitioning creditors likewise concede that they do not know one way or the other whether this is where the debtor resides.  It is the petitioning creditors' burden to show that service was effective, *see Brockmeyer v. May*, 383 F.3d 798 (9th Cir. 2004) ("Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4.") and the mere listing of an

---

[3] The petitioning creditors also cite to *Miller v. Smith*, 952 F. Supp.2d 275, at 282 n.2 (D.D.C. 2013), and *Ali v. Mid-Atl. Settlement Servs.*, 233 F.R.D. 32 (D.D.C. 2006), in support of the proposition that actual notice can render otherwise defective service sufficient.  In *Miller v. Smith*, the court declined to reach the question of whether the challenged service was effective because the plaintiff had ultimately cured the defective service and filed a new return of summons demonstrating as much.  The court's discussion of the importance of actual notice in that case related to the question of whether the defendant had been prejudiced by the delay in service, not whether actual notice was a basis for excusing the requirements for proper service.  As for *Ali v. Mid-Atl. Settlement Servs.*, that case, like *Rabinowitz*, addressed the question of how to define a party's "dwelling or usual place of abode," with actual notice being a factor to consider in that analysis, but not suggesting that actual notice displaces the requirement that the service address be the party's "dwelling or usual place of abode."

9

address on court papers, filed in a different court, is not enough to carry the petitioning creditors' burden of proof to demonstrate that the service address was the debtor's "dwelling or usual place of abode."  Even if the creditors acted in good faith, the service address did not meet the requirements of Rule 4(e)(2)(B), and no amount of good faith on the petitioning creditors' part can overcome that fact.  The debtor rightfully assumed he would have a defense to the adequacy of service, and the court will thus not treat his failure to respond to the involuntary petition as a default.  The petitioning creditors, however, are free to pursue discovery to attempt to garner evidence showing that the service address was actually the debtor's "dwelling or usual place of abode."[4]  Thus, the vacating of the order for relief will be a tentative order subject to being set aside if the petitioning creditors adduce evidence showing valid service.

---

[4] The motion to vacate the order for relief is a contested matter in which discovery may be conducted.  The court could have held a scheduling conference in this matter to set discovery deadlines, but in light of the preliminary issues that might have mooted the need for discovery, the court has proceeded to address those preliminary issues.  It may be that, in light of the explanations provided by the debtor and his attorney, the petitioning creditors no longer wish to press their claim that service was valid at the Offut Lane address.  The court, however, has no way of knowing the petitioning creditors' current stance on this issue, and will leave it to the petitioning creditors to decide how to proceed.

IV

The court having found service to be ineffective, the question remains how the petitioning creditors *can* make effective service on the debtor if, after conducting discovery, they are unable to show valid service at the Offut Lane address.  The petitioning creditors have called into question the veracity of the debtor's contentions, past and present, with respect to his whereabouts and with respect to his country of residence.  On the other hand, the motion to vacate the order for relief, filed by a member of the bar of the court of which this court is a unit, as well as the debtor's affidavit (signed under penalty of perjury although not under penalty of perjury of the laws of the United States), state that the debtor currently resides at 54 Avenue Victor Hugo, 75116 Paris, France.  The petitioning creditors contend that this is false, and that the address is the business address of the individual who notarized the debtor's affidavit, not the debtor's residence.

The petitioning creditors have presented evidence challenging the veracity of the debtor's and the debtor's attorney's contention that 54 Avenue Victor Hugo is the debtor's residence.  If the debtor were claiming an address in the United States, the court would resolve the dispute by simply treating the debtor as estopped from later claiming that service by first class mail on his stated address was ineffective.  Here, however,

11

the debtor claims to reside outside of the United States, which, if true, will likely impose additional procedural requirements on the petitioning creditors, and I will not require the petitioning creditors to go through the motions of serving the debtor in France if there is a genuine dispute with respect to whether the debtor truly resides in France.

The question, then, is how to proceed.  The petitioning creditors have several options.  First, as already noted, they may continue to pursue their claim that service was valid and conduct discovery as needed.  Second, they can choose to rely on the address provided by the debtor and serve him with the summons and involuntary petition at that address.  Third, they can attempt to obtain a Rule 4(d) waiver of service from the debtor, who "has a duty to avoid unnecessary expenses of serving the summons."  Fourth, they can file a motion for alternative service, at which time the court can hold an evidentiary hearing and make factual findings with respect to the debtor's claim that

he resides in France.[5]  This all seems like an unnecessary waste of time, but absent a motion for alternative service or a waiver from the debtor, I cannot, from a due process standpoint, simply dispense with the service requirements of Rule 4.  I would, however, encourage the parties to arrive at a consensual agreement with respect to how this proceeding should move forward, to permit the court to evaluate the merits of the debtor's defenses to the involuntary petition rather than spending the next several months adjudicating a dispute with respect to where the debtor resides for purposes of making valid service.

V

The debtor's attorney contends that the petitioning creditors did not proceed in good faith when they served the

---

[5] Although the court has concluded that the petitioning creditors failed to carry their burden to show that the disputed service address was the debtor's "dwelling or usual place of abode," they have cast genuine doubt on the debtor's contention that he has resided in France since 2011.  Indeed, the debtor listed a local address on forms recently submitted to the Superior Court for the District of Columbia, and according to the debtor's attorney, the debtor holds a U.S. driver's license that lists the debtor's address as an address here in the District of Columbia.  Likewise, the petitioning creditors' affidavits cite to numerous examples of the debtor continuing to conduct business and reside in D.C. in 2012 and beyond, and petitioning creditor Kalellis points out that even prior to the debtor's divorce, the debtor often spent extensive periods of time abroad, but continued to be a U.S. resident residing at 3232 Garfield St., NW, Washington D.C.  Thus, it appears the petitioning creditors may be able to show that the court ought to treat the Garfield St. address as the debtor's last known "dwelling or usual place of abode" and make service there.

debtor at the Offutt Lane address.  The only reason the petitioning creditors served the debtor at the disputed service address was because the debtor, through his attorney, expressly advised the Superior Court in a public filing that this was the debtor's address.  The attorney may not have specified that the debtor resided at that address, but the confusion that ensued with respect to service in this case can be traced directly to a representation made by the debtor, through his attorney, to a court of law.  For that reason, I find that the petitioning creditors' reliance on that address was reasonable and there is no basis for shifting costs or fees, as requested by debtor's counsel, for the challenge to service raised by the debtor.[6]

VI

It is

ORDERED that the debtor's affidavit is STRICKEN without prejudice to the re-filing of the document either in accordance with the authentication requirements of the Hague Convention, or

---

[6] The petitioning creditors argue that service ought to be deemed valid on grounds of judicial or equitable estoppel.  The court agrees that a representation made to another court is not meaningless, and on that basis I have found that the petitioning creditors' reliance on the disputed service address when attempting to serve the debtor was reasonable.  Reasonable reliance, of course, does not render defective service effective, and merely providing an address to a court is not "taking a legal position" with respect to a matter such that the party cannot later dispute whether the address served as a residence or served merely as an address for receiving mail.  The facts simply do not fit properly within an estoppel analysis, and the court rejects the argument accordingly.

in accordance with the requirements of an unsworn declaration executed in a foreign country.  It is further

ORDERED that the petitioning creditors have not established that service on the debtor was effective service.  It is further

ORDERED that the order for relief is tentatively VACATED, but will be reinstated if after discovery the petitioners are able to show that they made valid service.  It is further

ORDERED that the clerk of court is directed to re-issue the summons.  It is further

ORDERED that within 21 days after entry of this order, the petitioning creditors shall file a status report with the court advising whether they intend to pursue discovery to demonstrate that service at the Offut Lane address was valid service, serve the debtor at his stated address, pursue a waiver or otherwise reach a consensual resolution to the service dispute with the debtor, or file a motion for alternative service.  It is further

ORDERED that if no such status report is filed, this case will be dismissed.

[Signed and dated above.]


Copies to: Petitioning Creditors; Recipients of e-notification of filings.